IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GEORGE IVAN LOPEZ | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 04-4181 |
| JEFFREY BEARD, ET AL. | : | |

## MEMORANDUM

**SURRICK, J.**　　　　　　　　　　　　　　　　　　　　　　　　　　**MARCH 3 , 2017**

Presently before the Court is Petitioner George Ivan Lopez's Motion for Discovery. (ECF No. 54.)[1] For the reasons that follow, Petitioner's Motion will be granted in part and denied in part.

### I. BACKGROUND

#### A. Factual Background

George Ivan Lopez ("Petitioner") was convicted on March 19, 1996 in the Lehigh County Court of Common Pleas of first-degree murder, robbery, theft, receiving stolen property, and conspiracy, in connection with the death of David Bolasky. *See Commonwealth v. Lopez*, 739 A.2d 485, 489 (Pa. 1999).[2] Petitioner was jointly tried alongside co-defendant Edwin Romero, and sentenced to death on April 17, 1996. *Lopez*, 739 A.2d at 487. In 1999, Petitioner filed an

---

[1] On November 25, 2016, Petitioner filed a Pro Se *Hazel-Atlas* Petition pursuant to Fed. R. Civ. P. 60(b), alleging intentional fraud upon the court and fraudulent concealment of evidence. (ECF No. 78.) That same day, Petitioner also filed a Motion to Hold his Habeas Corpus Proceeding (No. 04-4181) Temporarily in Abeyance Pending This Court's Disposition of His *Hazel-Atlas* Motion Filed Against the Trial Court's Prosecutors and Senior Deputy Attorney General and Outstanding Discovery Motions. (ECF No. 77.) This Motion also requested that the Court grant the instant discovery petition. (*Id.*) On November 25, 2016, Petitioner also filed a supplemental Motion for Discovery requesting discovery material to assist him in establishing his *Hazel-Atlas* claim. (ECF No. 79.) On January 6, 2017, Petitioner withdrew his November 25 Petition to place his Habeas Petition in Abeyance. (ECF No. 81.)

[2] The factual background of the Bolasky murder is summarized in *Lopez*, 739 A.2d at 489-93.

unsuccessful appeal of his conviction directly to the Pennsylvania Supreme Court. *See id.* at 494. Petitioner argued, *inter alia*, that his trial attorney's decision to not join in a motion to suppress the testimony of jailhouse witness Timateo Paladino—a/k/a Daniel Lopez—amounted to ineffective assistance of counsel. *See id*. at 500. On October 1, 1999, Petitioner's conviction was affirmed. The United States Supreme Court denied Petitioner's petition for writ of certiorari. *Lopez v. Pennsylvania*, 530 U.S. 1206 (2000). Petitioner subsequently sought timely relief in Pennsylvania state court pursuant to Pennsylvania's Post Conviction Relief Act ("PCRA"). *See Commonwealth v. Lopez*, 854 A.2d 465 (Pa. 2004). The PCRA court denied Petitioner relief. *Id*. at 467. The Pennsylvania Supreme Court affirmed this decision. *Id*. at 467. In 2012, Petitioner filed a second PCRA petition, which was also denied. *See Commonwealth v. Lopez*, 51 A.3d 195 (Pa. 2012). This denial was affirmed by the Pennsylvania Supreme Court. *See id.* at 196 (affirming denial of Petitioner's second PCRA petition on the grounds that Petitioner's claims are time-barred, since the discovery of evidence of disciplinary proceedings against his trial counsel was publicly available for longer than 60 days before the petition was filed). Having exhausted his state court remedies, Petitioner filed a petition for federal habeas corpus relief. (ECF No. 53.) In furtherance of Petitioner's habeas petition, he filed the instant Motion requesting leave to engage in discovery with respect to two of his habeas claims. (*Id*.) First, Petitioner seeks discovery with regard to Claim VII of his pending habeas petition, which alleges that Paladino was a government agent whose testimony implicating Petitioner should not have been admitted. (Pet'r's Mot. 1, ECF No. 54.) Petitioner also requests discovery with regard to Claim XVII[3] of his habeas petition, which includes the results of a polygraph test of

---

[3] Petitioner's Reply to the Commonwealth's Response to Petitioner's Motion for Discovery (ECF No. 73) states that Petitioner has requested discovery related to Claim VII and Claim XIII. This appears to be a typographical error by Petitioner. All other briefing in this matter indicates that he seeks discovery related to Claims VII and *XVII* (emphasis added).

trial witness Miguel Moreno, as well as any exculpatory or impeachment evidence related to the polygraph test, and any agreement between Moreno and the Commonwealth related to his cooperation and his sentence. (Pet'r's Mot. 1.)

### B. Procedural Background

On September 2, 2004, Petitioner filed a petition in this Court for federal habeas corpus review. (ECF No. 3.) On September 10, 2004, we granted Petitioner's motions for appointment of federal habeas corpus counsel under 21 U.S.C. § 848(q), a stay of execution, and leave to proceed *in forma pauperis*. (ECF No. 4.) On March 4, 2005, we granted Petitioner's motions to compel attorneys James J. Burke and James L. Heidecker, Jr. to produce any and all files concerning Petitioner. (ECF Nos. 13, 14.) On April 4, 2012, we stayed this matter pending the resolution of Petitioner's related claim under Pennsylvania's PCRA. The matter was placed in civil suspense. (ECF No. 26.) The case was removed from civil suspense on March 11, 2015. (ECF No. 40.) On June 12, 2015, Petitioner filed a brief in support of his habeas petition. (ECF No. 53.) On June 15, 2015, Petitioner filed the instant Motion for Discovery. (Pet'r's Mot.)

## II. LEGAL STANDARD

"Under Rule 6(a) of the Rules Governing Section 2254 cases, a judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of such discovery." *Steward v. Grace*, 362 F. Supp. 2d 608, 622 (E.D. Pa. 2005) (citation and internal quotation marks omitted). However, courts within this District have maintained that "a habeas petitioner, unlike the civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." *Id*. In determining whether to permit discovery, the Third Circuit has noted that "[t]he burden rests upon the petitioner to demonstrate that the sought-after information is pertinent and that there is good cause for its production." *Williams v.*

3

*Beard*, 637 F.3d 195, 209 (3d Cir. 2011).  A petitioner establishes "good cause" when "specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief."  *Bracy v. Gramley*, 520 U.S. 899, 908-09 (1997) (quoting *Harris v. Nelson*, 394 U.S. 286, 299 (1969)).[4]

"[B]ald assertions and conclusory allegations do not provide sufficient ground to warrant requiring the state to respond to discovery or to require an evidentiary hearing."  *Zettlemoyer v. Fulcomer*, 923 F.2d 284, 301 (3d Cir. 1991).  Indeed, "[f]ishing expeditions" are not permitted.  *Beard*, 637 F.3d at 210.  Therefore, it is not enough for a petitioner to speculate that the discovery he seeks might yield information that would support one of his claims, or that it would give support to a new claim.  *See Deputy v. Taylor*, 19 F.3d 1485, 1493 (3d Cir. 1994) ("[H]abeas corpus is not a general form of relief for those who seek to explore their case in search of its existence." (citation and internal quotation marks omitted)).  *But cf. Johnston v. Love*, 165 F.R.D. 444, 445 (E.D. Pa. 1996) (maintaining that a court must grant a petitioner's motion for discovery "if there is a sound basis for concluding that the requested discovery might allow him to demonstrate" that he is entitled to relief); *Han Tak Lee v. Glunt*, 667 F.3d 397 (3d Cir. 2012) (reversing denial of habeas petition where petitioner demonstrated good cause to conduct discovery).

## III. DISCUSSION

In his first claim for discovery, Petitioner seeks production of "any document or statement tending to show that Paladino was in fact intentionally placed in close proximity to Petitioner at the time Paladino obtained the admissions from [Petitioner]."  (Pet'r's Mot. 5.)  Petitioner also requests that the Commonwealth produce "any notes or memoranda in the

---

[4] The Supreme Court in *Bracy* elaborated that under these circumstances, "it is the duty of the courts to provide the necessary facilities and procedures for an adequate inquiry."  *Bracy*, 520 U.S. at 909; *see also Lee v. Glunt*, 667 F.3d 397, 404 (3d Cir. 2012).

possession of . . . the local prosecutor, the Lehigh County Prison, or the Allentown Police Department tending to show the same or showing that Paladino was instructed to elicit statements from Petitioner and/or his co-defendants." (*Id*.) In his second discovery claim, Petitioner seeks an order mandating the Commonwealth to produce "any statements, reports, notes, memoranda, writings, transcripts or recordings regarding Cooperating Co-Defendant Miguel Moreno's interrogation, including results of polygraph examinations administered to Moreno," which might "show that Moreno testified pursuant to an agreement." (*Id.* at 5.)

        A.        **Discovery With Regard to Paladino's Testimony**

In seeking discovery related to Paladino's testimony, Petitioner asserts an ineffective assistance of counsel claim against Petitioner's trial attorney, James Heidecker, Esq. He alleges that Heidecker performed "abysmally" at his trial. (Pet'r's Habeas Mem. 1-2, ECF No. 53.) Petitioner alleges that Heidecker failed to disclose that he was facing disciplinary charges of which Petitioner was previously unaware during the course of his trial. (*Id.* at 1.) He also contends that in the 1999 direct appeal of his guilty verdict to the Pennsylvania Supreme Court, Heidecker ineffectively failed to object to Paladino's testimony addressing the contents of Petitioner's handwritten statement that he assisted Moreno in disposing of Mr. Bolasky's body. (*Id.*); *Lopez*, 739 A.2d at 499. The Pennsylvania Supreme Court rejected Petitioner's ineffective assistance claim, finding that Heidecker had a reasonable basis to not object, since Heidecker used the testimony "to support [Petitioner's] defense that he only assisted in the disposal of Bolasky's body," not that he participated in the murder. *Lopez*, 739 A.2d at 499.

Petitioner further claims that Heidecker should have joined in Romero's motion to suppress Paladino's statements, which Petitioner alleges were attained in violation of his Fifth

Amendment Rights.[5]  *Id.* at 500.  Romero argued in his suppression motion that "[Paladino's] testimony should be suppressed because he was acting as an agent of the Commonwealth when he obtained incriminating statements from Romero [] and [Petitioner] at the Lehigh County Prison."  *Id.*[6]  In support of his contention that Heidecker should have joined in Romero's motion to suppress, Petitioner contends that while awaiting trial in the Lehigh County Prison, he and Paladino were housed in close proximity so that Paladino—acting in concert with prosecutors—could obtain inculpatory evidence from both Petitioner and from Petitioner's co-defendants.[7]  While Petitioner concedes that he cannot currently demonstrate that he and Paladino were intentionally and strategically placed in close proximity, he claims that limited discovery will permit him to prove that he and Paladino were housed together in order for Paladino to elicit inculpatory statements.  (Pet'r's Mot. 3.)

Relying on its "independent review of the record," the Pennsylvania Supreme Court found that Paladino was not acting as an agent of the Commonwealth when he obtained incriminating statements from Petitioner.  *Lopez*, 739 A.2d at 500.  Specifically, the Supreme Court stated:

> the trial court found that the authorities never solicited [Paladino] to obtain information . . . .  Rather, believing it would benefit him at his sentencing, [Paladino] decided, on his own, to attempt to obtain incriminating statements

---

[5] In the police report, Paladino relayed that he befriended Petitioner while the two were incarcerated together at the Lehigh County Prison. (Pet'r's Mot. Ex. 1.) Petitioner was moved to Cell 4115 Pod 4C in the Lehigh County Prison on July 21, 1995, and the next day Paladino was moved to Cell 4112 on Pod 4C. (*Id.*)

[6] Romero's pretrial motion alleged only a Fifth Amendment violation.  The motion was joined by co-defendant Barbosa, who was also tried in connection with the underlying murder, and alleged Fifth and Sixth Amendment violations.  Similarly, Petitioner contends that the contested testimony was permitted in violation of both the Fifth and Sixth Amendments.

[7] In the instant Motion, Petitioner provides two police reports that purportedly show that Petitioner and the witness were housed in close proximity on at least two separate occasions.

>from [Petitioner].  In addition, the trial court found that [Paladino] was never promised any consideration in return for the information he obtained concerning the Bolasky murder.

*Id.* at 500.[8]  The record reveals that the trial court and the Supreme Court were correct.  There is no basis on which to conclude that Paladino's testimony should have been suppressed.

Respondents cite the case of *Commonwealth v. Franciscus*, 710 A.2d 1112 (Pa. 1998), as an example of when a jailhouse informant's testimony should be suppressed.  (Commw. Resp. 120, ECF No. 64.)  In *Franciscus*, the Pennsylvania Supreme Court granted the defendant a new trial based on a jailhouse informant's testimony that was obtained in violation of the defendant's Sixth Amendment right to counsel.  *Franciscus*, 710 A.2d at 1119 (citing *Commonwealth v. Moose*, 602 A.2d 1265 (Pa. 1992)).  The court in *Moose*—the facts of which the Pennsylvania Supreme Court found were similar to those in *Franciscus*—concluded that the jailhouse informant was clearly a government agent working in concert with the police, since he "had been in the county jail for three years waiting to be sentenced[, and] the Commonwealth repeatedly delayed sentencing every time [the informant] produced a new confession."  *Moose*, 602 A.2d at 1270.  The court also noted that "although the district attorney may not have given [the informant] specific instructions, it is clear that [the informant] was well aware of what he had to do while in jail to get a good recommendation at his sentencing."  *Id.*

We agree with the distinctions that Respondents draw between the facts in this case and the facts in *Franciscus* and *Moose*.  Unlike in *Franciscus* and *Moose*, the record here supports that Paladino was not acting as an agent of the Commonwealth.  The record reveals that "the authorities . . . made no promises to [Paladino], and took no action to assist him in obtaining incriminating information from [Petitioner] or any other inmates."  (Commw. Resp. 120.)

---

[8] In his habeas petition, Petitioner again argues that Paladino's trial testimony was improperly admitted and that defense counsel's failure to join the motion to suppress the petition constituted ineffective assistance.

7

Petitioner fails to allege that any facts or documents exist to refute this conclusion. During his examination, Detective Joseph Hanna, who recorded Paladino's statement, stated the following:

> I made it clear to him that we were not requesting that he go back and ask questions; that we would not be able to do that; that he was not acting as an agent for us in any manner. He acknowledged an understanding of that and that was made very clear to him.

(Jan. 8, 1996 Hr'g Tr. 64, State Court Record Tab C (on file with Court).) Indeed, the facts surrounding Petitioner's claim are fully developed. The police records Petitioner attaches to his motion are unavailing. They demonstrate nothing more than what has been established since the pretrial hearing stage—that Paladino and the defendants were celled in close proximity at the Lehigh County Prison.

In addition, although Petitioner did not move to suppress Paladino's testimony during the trial, his co-defendants did. A hearing on the motion was held. Paladino was not implicated in the murder for which Petitioner was convicted; instead, Paladino was awaiting trial on an unrelated charge and had counsel who represented him in that matter. Detective Hanna and Paladino's counsel, Steven Luksa, provided sworn testimony at the pre-trial hearing. Each testified about the circumstances surrounding Paladino's testimony. (*Id.* at 25.) The testimony establishes that Paladino did not elicit information from Petitioner at the Commonwealth's direction or because he was promised consideration. (*Id.* at 25-28.) To the contrary, the record demonstrates that Paladino received a plea offer from prosecutors *before* any discussion ensued with regard to Petitioner's murder charge. (*Id.*) During his examination, Luksa testified that he and prosecutors learned that Paladino had information with regard to Petitioner's involvement in the murder only *after* Paladino's plea had been arranged. (*Id.* (emphasis added).)

Luksa further testified that even after learning that Paladino possessed incriminating statements from Petitioner, Paladino was not instructed on what to do when he returned to the

8

Lehigh County Prison. (*Id.* at 33-35.) According to Luksa, Paladino was neither directed to elicit information from Petitioner, nor was he asked to refrain from doing so. (*Id.* at 35.) He was instructed simply "to just go back and be a prisoner." (*Id.*) Similarly, both Luksa and Detective Hanna testified that no instruction was given to the Department of Corrections with regard to Paladino's cell placement. (*Id.* at 49-51.) Detective Hanna stated firmly that at no time did Paladino act at his direction to gain information with regard to the murder at issue. (*Id.* at 64-67.) Detective Hanna further testified that Paladino's own criminal charges were never addressed, and that Paladino never sought favorable treatment during his discussions with the State. (*Id.* at 69-70.) Petitioner's co-defendants were provided with Paladino's written notes, which detailed the information Paladino obtained regarding the defendants' involvement in the murder. (*Id.*) Finally, the co-defendants' attorneys had an opportunity to scrutinize Detective Hanna's investigatory notes, which they inquired into at the hearing. (*Id.*)

Petitioner has not produced one shred of evidence to rebut the Commonwealth's contention that Paladino's conduct was not influenced by prosecutors or investigators. What Petitioner seeks is precisely the type of fishing expedition that the law forbids. There is nothing to indicate that additional discovery on this issue would be anything but futile. The decision of the trial court and the Pennsylvania Supreme Court that Paladino was not acting as a government agent was correct and should not be disturbed. *See Weeks v. Snyder*, 219 F.3d 245, 258 (3d Cir. 2000) (maintaining that federal habeas courts must "give great weight to the considered conclusions of coequal state judiciary") (quoting *Miller v. Fenton*, 474 U.S. 104, 112 (1985)). Ordering discovery on this issue would be inappropriate based upon the record, notwithstanding the fact that this is a capital case.

    **B.**    **Discovery With Respect to Cooperating Co-Defendant Miguel Moreno's Testimony**

As mentioned above, Petitioner also seeks discovery with respect to the circumstances surrounding Moreno's trial testimony and the results of his polygraph examination. (Pet'r's Mot. 5.) The Commonwealth argues that since Petitioner's second PCRA petition was untimely filed, Petitioner's discovery claims with regard to Count XVII are procedurally defaulted and should not be reviewed at the habeas stage. (Commw. Resp. 10.)

Petitioner wishes to develop the facts surrounding the alleged agreement between Moreno and the government, wherein Moreno received a reduced prison sentence in exchange for his testimony.[9] (Pet'r's Mot. 5; Pet'r's Habeas Mem. 86-87.) Petitioner also seeks the results of Moreno's polygraph examination, wherein Moreno allegedly disclaimed any knowledge of Petitioner's involvement in Bolasky's murder. (Pet'r's Mot. 5.) He claims the results of this examination were never provided to his counsel prior to trial. (*Id.*) Petitioner argues that evidence of Moreno's agreement with the Commonwealth and the results of his polygraph examination constitute impeachment material that should have been disclosed pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963) and *Wood v. Bartholomew*, 516 U.S. 1 (1995). In *Wood*, the Court held that a prosecution's failure to disclose the existence of a polygraph examination "justifies setting aside a conviction . . . where there exists a 'reasonable probability' that had the evidence been disclosed the result at trial would have been different." 516 U.S. at 5.

In his second PCRA petition, Petitioner attempted to litigate the Commonwealth's alleged *Brady* violations, stating:

> The prosecution withheld from the defense material exculpatory and impeachment evidence, including information concerning Miguel Moreno's taking of a lie detector test and an agreement between the Commonwealth and Moreno for a substantially reduced sentence in exchange for Moreno's testimony.

---

[9] Moreno's testimony revealed that he was originally supposed to receive a life sentence for his participation in Mr. Bolasky's murder, but instead received a 20-40 year sentence. (Pet'r's Mot. 5.)

As such, the Commonwealth violated Petitioner's rights to due process and a fair trial.

(Second PCRA Pet. 2 (on file with Court).)  Petitioner's claims are time-barred and procedurally defaulted.

It is well-established that a petitioner must exhaust his state court remedies before obtaining habeas relief.  28 U.S.C. § 2254(b)(1)(A).  In Pennsylvania, an inmate exhausts his state court remedies by fairly presenting his claims to the state trial court and then to either the Pennsylvania Superior or Supreme Court.  *Lambert v. Blackwell*, 387 F.3d 210, 233-34 (3d Cir. 2004).  "If a petitioner fairly presented his claim to the state court, but the state court declined to review the claim on the merits because of a failure to comply with a state procedural rule, then the claim is procedurally defaulted."  *Gibson v. Beard*, 165 F. Supp. 3d 286, 297 (E.D. Pa. 2016) (citation omitted).  "A *habeas* petition should therefore be denied if it raises claims that were procedurally defaulted in state court."  *Norris v. Brooks*, 794 F.3d 401, 404 (3d Cir. 2015) (citation omitted).  This rule yields, however, when "the prisoner can demonstrate cause for the default and actual prejudice . . . or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."  *Id*. (citation and internal quotation marks omitted).  The United States Supreme Court has stated that "independent and adequate state ground doctrine" applies in cases "to bar federal habeas when a state court decline[s] to address a prisoner's federal claims because the prisoner ha[s] failed to meet a state procedural requirement.  In these cases, the state judgment rests on independent and adequate state procedural grounds."  *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991) (citing *Wainwright v. Skyes*, 433 U.S. 72, 81 (1977)).

In addition, "[t]o show cause, a petitioner must demonstrate some objective factor external to the defense that prevented compliance with the state's procedural requirements."

*Keller v. Larkins*, 251 F.3d 408, 415 (3d Cir. 2001) (citing *Coleman*, 501 U.S. at 753).[10] To satisfy the "fundamental miscarriage of justice" prong, the petitioner must offer new evidence to demonstrate "that he is actually innocent of the crime." *Schlup v. Delo*, 513 U.S. 298, 323-24 (1995); *McCleskey v. Zant*, 499 U.S. 467, 494 (1991).

Petitioner's claims are procedurally defaulted. Petitioner has failed to plead or offer any evidence to show "cause" for the default. Petitioner did not include any claim referencing Moreno's testimony in his initial PCRA petition, which he filed in 2004. He included as its own substantive claim contentions concerning Moreno's testimony in the second PCRA petition, which was both filed and dismissed in 2012. In dismissing Petitioner's second PCRA petition, the Pennsylvania Supreme Court did not address any claims beyond Petitioner's ineffective assistance argument that discovery of Heidecker's professional misconduct required reconsideration of the claims made in the first PCRA petition. Petitioner's claim with regard to Moreno's polygraph or testimony was unrelated to Petitioner's ineffective assistance claim. Since the Pennsylvania Supreme Court dismissed Petitioner's second PCRA petition nearly four years ago, and Petitioner has not asserted any justification of cause for his renewed request seeking information related to Moreno's polygraph or testimony, Petitioner's claim is time-barred.

Notwithstanding the fact that Petitioner's claims are procedurally defaulted, Petitioner has demonstrated that a "fundamental miscarriage of justice" could result from a failure to consider his claims. *Keller*, 251 F.3d at 416 (citing *Coleman*, 501 U.S. at 750). It is evident that

---

[10] In *Coleman*, the Court rejected the petitioner's contention that "cause" was demonstrated by his attorney's filing error. 501 U.S. at 725. The Court maintained that "attorney error can be 'cause' only if it constitutes ineffective assistance of counsel violative of the Sixth Amendment. Because there is no constitutional right to an attorney in state post-conviction proceedings, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings." *Id.* (internal citations omitted).

Moreno testified at trial that he believed that in return for his trial testimony against Petitioner and Romero he would receive a life sentence, but that he was uncertain as to the details of this deal with the District Attorney. (Habeas Pet. 109, ECF No. 17 (under seal) (citing Mar. 12, 1996 Trial Tr.).) Almost five years later, however, Moreno clarified that he had lied during his trial testimony with regard to his deal with the District Attorney, and that in exchange for his testimony he received a substantially reduced sentence of twenty to forty years. (*Id.* at 109-110; *Id.* at Ex. 13.) The evidence of Moreno's deal with the Commonwealth would have been critical for counsel to use at trial. It would have had a significant effect on the jury's accepting or rejecting Moreno's testimony. Since no evidence of the deal was ever disclosed to trial counsel, it could not be used at trial. This severely prejudiced Petitioner's case.

In addition, under *Brady* and *Wood*, evidence of the results of Moreno's polygraph examination should have been disclosed to Petitioner. In an opinion in a habeas matter dealing with Petitioner's co-defendant, Edwin Romero, Chief Judge Petrese Tucker of this District granted Petitioner Romero's discovery request for the results of Moreno's polygraph examination. *See Romero v. Beard*, No. 08-0528, 2011 WL 3862317, at *8 (E.D. Pa. Aug. 31, 2011). There, the court reasoned that Moreno presented sufficient evidence to warrant an Order requiring the Commonwealth to share the results of the polygraph examination, noting that Moreno:

> made several contradictory statements during the course of the investigation that would not only impeach his credibility, but could reasonably raise a question as to the veracity of his testimony at trial. If [the p]etitioner shows that Moreno's testimony was false and the product of prosecutorial misconduct, it would weigh in favor of overturning the sentence. Further, as this is a capital case, discovery should be granted liberally.

*Romero*, 2011 WL 3862317, at *11. Specifically, the court pointed out that during the course of the investigation, Moreno provided at least eight different versions of the story surrounding

13

Bolasky's murder, many of which did not implicate Romero in the murder; "three individuals associated with the Commonwealth represented to the state court that Moreno was given a polygraph examination about the Bolasky killing and that the examination was part of the plea deal Moreno was given"; testimony emerged that Moreno passed a polygraph test; and four years following Petitioner's conviction, Moreno testified that his inculpatory testimony against Romero was false. *Id.* at *10.

In this case, if Moreno's testimony was false, and there was prosecutorial misconduct, relief may be appropriate. Petitioner states that "[Moreno] gave a statement in the context of a polygraph exam in which he disclaimed knowledge of Petitioner's involvement." (Pet'r's Mot. 5.) It also appears that there was some sort of agreement between Moreno and the Commonwealth with regard to Moreno's sentence. Notwithstanding the generalized nature of Petitioner's statement and the procedural default, the denial of Petitioner's discovery requests could lead to a miscarriage of justice.

Petitioner is facing a death sentence. His requests for discovery related to Moreno's polygraph and his plea agreement are perfectly reasonable under the circumstances. Accordingly, the Commonwealth shall provide Petitioner with any evidence in its possession or control tending to show that Moreno testified pursuant to an agreement with the Commonwealth. In addition, the results of any polygraph examinations of Moreno shall be provided to Petitioner.

## IV.  CONCLUSION

For the foregoing reasons, Petitioners Motion for Discovery is granted in part and denied in part.  An appropriate Order follows.

**BY THE COURT:**

_____
**R. BARCLAY SURRICK, J.**