# tIN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GEORGE IVAN LOPEZ | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 04-4181 |
| JEFFREY BEARD ET AL. | : | |

## MEMORANDUM

**SURRICK, J.**                                                                                MAY _16_, 2019

Presently before the Court in this capital habeas corpus action is Petitioner's Motion for Further Discovery Related to Whether Miguel Moreno Testified Pursuant to an Undisclosed Plea Agreement. (ECF No. 110.) For the reasons that follow, Petitioner's Motion will be granted in part and denied in part.

## I.   BACKGROUND

The factual background and procedural history of this case are set forth in our March 3, 2017 Memorandum, which granted in part and denied in part a previous motion by Petitioner for discovery regarding Commonwealth witness Miguel Moreno. *Lopez v. Beard*, No. 04-4181, 2017 WL 1293389, at *1-2 (E.D. Pa. Mar. 3, 2017). Additional background relevant to the instant Motion is as follows.

Moreno, along with Petitioner and two other co-defendants, was initially charged with the capital murder of David Bolasky in Allentown, Pennsylvania. (*See* Docket, *Commonwealth v. Lopez*, No. CP-39-CR-0001894-1995 (Lehigh Cty. Ct. Com. Pl.) ("*Lopez* Dkt."), Habeas Pet. Ex. 1; Docket, *Commonwealth v. Moreno*, No. CP-39-CR-0002012-1995 (Lehigh Cty. Ct. Com. Pl.) ("*Moreno* Dkt."), Habeas Pet. Ex. 23.) Moreno ultimately testified as a key prosecution witness against Petitioner. Between the date of Bolasky's murder and Petitioner's trial, Moreno was

interviewed by police and/or prosecution representatives at least seven times. (Holihan Dep. 8-12, ECF No. 110-1; Hanna Dep. 6-11, ECF No. 110-2.)

At Petitioner's trial, the prosecutor told the jury that, in exchange for Moreno's testimony, the Commonwealth had agreed *only* that it would not seek the death penalty against Moreno. (State Ct. Record, 3/11/1996 Trial N.T. 39-40 (on file with Court) (advising jury in opening statement that, in exchange for Moreno's cooperation, "[w]e're not pursuing the death penalty against [him]").) Moreno similarly testified: "I ain't got no deal. Just that no death penalty." (3/12/1996 Trial N.T. 57-58; *see also id.* at 107-08.) Moreno also testified at trial that his deal did not include an agreement by the Commonwealth not to charge his girlfriend, who is also the mother of his children. (*Id.* at 121.) He further testified that he never believed the police were going to charge his girlfriend. (*Id.*)

Less than a month after Petitioner and a co-defendant were convicted and sentenced to death, Moreno entered a plea of guilty to third-degree murder and robbery and was sentenced to 20 to 40 years in prison. (Habeas Pet. 109-10, ECF No. 17 (filed under seal).) A search of the Pennsylvania Inmate Locator system indicates that Moreno is no longer in a Commonwealth prison. *See* http://inmatelocator.cor.pa.gov/#/ (last accessed May 15, 2019). In addition, five years after Petitioner's conviction, at a post-conviction hearing for one of his co-defendants, Moreno gave testimony agreeing that he entered into a plea bargain for the sentence of 20 to 40 years. (Romero 5/26/2000 PCRA N.T. 304, Habeas Pet. Ex. 13.) At that hearing, Moreno also testified that the detectives investigating the Bolasky murder had told him "[t]hat if [he] didn't help, that they were going to arrest [his girlfriend] and take [his] kids away." (*Id.* at 338.)

Petitioner's previous motion for discovery sought, *inter alia*, evidence tending to show that Moreno testified pursuant to an undisclosed agreement with the Commonwealth, including

2

documentation of Moreno's interviews by police and prosecutors and results of Moreno's polygraph examinations. *Lopez*, 2017 WL 1293389, at *2. In granting Petitioner's request for this discovery, we noted that evidence regarding the terms of Moreno's deal with the Commonwealth would be "critical for counsel to use at trial" and "would have had a significant effect on the jury's accepting or rejecting Moreno's testimony." *Id.* at *6.

After the Commonwealth failed or declined to fully produce the discovery related to Moreno's cooperation, Petitioner filed a Motion to Compel Discovery and for Permission to Conduct Depositions. (Mot. to Compel, ECF No. 104.) This motion recounted Petitioner's unsuccessful efforts to obtain discovery regarding Moreno from the Commonwealth and requested an order: (1) compelling the disclosure of 13 documents related to Moreno that were identified by the Allentown City Solicitor in its April 3, 2017 response to Petitioner's *pro se* request pursuant to the Pennsylvania Right-to-Know Law, 65 Pa. Cons. Stat. Ann. §§ 67.101-67.3104 (the "Right-to-Know Materials"); and (2) requiring the Commonwealth to produce for deposition one member (or former member) of law enforcement and one member (or former member) of the Lehigh County District Attorney's Office with knowledge of whether Moreno testified pursuant to a plea agreement. (Mot. to Compel, Proposed Order; *see also* 3/9/2018 Order, ECF No. 100 (requiring status update regarding Right-to-Know Materials).) We granted Petitioner's Motion to Compel and ordered the Commonwealth to produce the Right to Know Materials and the requested witnesses for deposition. (Order, ECF No. 105.)

Petitioner took the depositions of Gavin P. Holihan, Esquire, the former Lehigh County Assistant District Attorney who was the lead prosecutor in the Bolasky murder case, and Joseph H. Hanna, the former Lehigh County Detective who was the lead investigator on the case. (Mot. for Further Discovery 3.) After taking those depositions, Petitioner filed the instant Motion for

3

Further Discovery seeking: (1) supervised inspection of the Lehigh County District Attorney's Office file related to Petitioner's prosecution; (2) supervised inspection of the file of Earl Supplee, Esquire, the Lehigh County Public Defender who represented Moreno in connection with the Bolasky murder; (3) the videotaped deposition of Theodore Racines, Esquire, Holihan's co-prosecutor in the Bolasky case; and (4) the deposition of the Honorable Robert L. Steinberg, who was the Lehigh County District Attorney at the time of Petitioner's prosecution and Moreno's plea. (Mot. for Further Discovery, Proposed Order.)

## II. DISCUSSION

Rule 6(a) of the Rules Governing Section 2254 Cases provides that "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery." The history of this rule "makes clear that its purpose is to ensure that the facts underlying a habeas corpus claim are adequately developed, and that it is a court's obligation to allow discovery in cases in which a petitioner has provided a sufficient basis for believing that discovery may be necessary to adequately explore a petitioner's claim for relief." *Johnston v. Love*, 165 F.R.D. 444, 445 (E.D. Pa. 1996). "Appropriate discovery is especially important in capital habeas cases." *Romero v. Beard*, No. 08-528, 2011 WL 3862317, at *4 (E.D. Pa. Aug. 31, 2011) (granting request by Petitioner's co-defendant for discovery of Moreno's polygraph results and interview documentation); *see also Payne v. Bell*, 89 F. Supp. 2d 967, 971 (W.D. Tenn. 2000) ("[M]ore liberal discovery is appropriate in capital cases where the stakes for petitioner are so high.").

In this case, Petitioner has established good cause for the requested discovery. At his deposition, Holihan testified that he has no knowledge or recollection of an agreement by the Commonwealth with Moreno prior to the conclusion of the murder trial, other than the

4

agreement not to seek the death penalty. (Holihan Dep. 14-15, 17-19, 26-27.) Hanna testified that he does not recall whether there was any pretrial arrangement or agreement between the Commonwealth and Moreno. (Hanna Dep. 12-15, 22-23.) However, neither Holihan nor Hanna could provide any definitive explanation of how Moreno came to plead guilty to only third-degree murder and robbery and to receive a sentence of 20-40 years, rather than life in prison. (Holihan Dep. 17-19, 24-27; Hanna Dep. 17-18. 22-23.) Both Holihan and Hanna testified that they believed Moreno received an improved plea and sentence because he was less culpable than the other cooperating defendant and provided particularly valuable information regarding the Bolasky murder. (Holihan Dep. 25; Hanna Dep. 19-20.) However, Holihan also testified that although he was not aware of any agreement "other than not pursuing the death penalty," he did not "have a recollection of whether anyone from higher or more authority in my office would have communicated to [Moreno]." (Holihan Dep. 18-19.) He further stated: "I don't have a recollection of that. But I can't answer that definitively for you today." (*Id.* at 19.)

Under *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the prosecution must disclose to the defense any evidence that is favorable to the accused and material to guilt or punishment. This disclosure obligation applies equally to impeachment evidence and requires the disclosure of agreements or deals—whether express or tacit—made with a witness. *See Giglio v. United States*, 405 U.S. 150, 154 (1972) (finding a due process violation where prosecution failed to disclose evidence that key witness had received a deal for his testimony); *Douglas v. Workman*, 560 F.3d 1156, 1186 (10th Cir. 2009) ("*Brady* requires disclosure of tacit agreements between the prosecutor and a witness. A deal is a deal—explicit or tacit."); *Harshman v. Superintendent, State Corr. Inst. at Rockview*, ___ F. Supp. 3d ___, No. 17-116, 2019 WL 1354048, at *10 (M.D.

5

Pa. Mar. 26, 2019) (noting that "*Brady* evidence is not limited to actual 'deals' or 'agreements' between witnesses and the government").

Based on the background outlined above, including Moreno's inconsistent testimony and the ambiguous testimony of Holihan and Hanna, there is a sound basis to conclude that further discovery might reveal an undisclosed agreement by the Commonwealth to afford Moreno additional leniency or other consideration in exchange for his testimony. Discovery of the circumstances surrounding Moreno's plea arrangement is particularly appropriate because the testimony by Moreno and another cooperating defendant was key to the Commonwealth's case, which, by the prosecutor's admission, did not involve physical or forensic evidence. (*See* 3/11/1996 Trial N.T. 32, 55 (informing jury that "[t]his is not a case built on forensic evidence," and "there is no physical evidence whatsoever that links Mr. Romero or Mr. Lopez to the scene of the crime . . . This is not a DNA case . . . This is a case where we will have dirty, repulsive criminals tell you what they know from this witness stand"). *See, e.g.*, *Simmons v. Beard*, 590 F.3d 223, 236 (3d Cir. 2009) (noting importance of impeachment evidence regarding witness who played key role in trial). Finally, we note the high stakes involved in this capital case and again conclude that denial of Petitioner's discovery requests "could lead to a miscarriage of justice." *Lopez*, 2017 WL 1293389, at *7.

With regard to the specific discovery requested, we are satisfied that *if* there was an undisclosed express or tacit agreement with Moreno, evidence of any such agreement would presumably be revealed by inspection of the files of the Lehigh County District Attorney's Office or the files of Moreno's Public Defender, and by the deposition of Moreno's former counsel, Attorney Supplee. With regard to former Assistant District Attorney Racines, the record reflects that he was the co-prosecutor in the Bolasky case. Holihan testified that Racines

6

served as second chair in the case but was in a position senior to Holihan in the District Attorney's Office. (Holihan Dep. 28.) The record also reflects that Racines participated in two of the Moreno interviews. (*Id.* at 10-12.)

Finally, Judge Steinberg was the Lehigh County District Attorney during the time period relevant to this matter. The record reflects that Judge Steinberg participated in at least one of the Moreno interviews. (Holihan Dep. 9.) Given his position at the time, it is reasonable to presume that then-D.A. Steinberg would have had knowledge of and authority to approve the terms of Moreno's plea. In addition, Holihan testified that if there had been a further deal with Moreno, it would have been approved by the District Attorney or someone senior to Holihan. (*Id.* at 14-15.) Obtaining discovery from Judge Steinberg regarding his historical knowledge of this matter does not implicate the deliberative processes or reasoning underlying any judicial determinations. *See, e.g., Washington v. Strickland*, 693 F.2d 1243, 1263 (5th Cir. 1982) (noting that court can consider testimony of a judge regarding his knowledge of historical facts), *rev'd on other grounds*, 466 U.S. 668 (1984).

## III. CONCLUSION

For the foregoing reasons, Petitioner's Motion will be granted except with respect to the requested deposition of Judge Steinberg. At this juncture we will deny without prejudice Petitioner's request to depose Judge Steinberg and will instead permit Petitioner to submit proposed interrogatories regarding Judge Steinberg's knowledge of and involvement in Petitioner's prosecution and Moreno's cooperation and plea.

An appropriate Order follows.

BY THE COURT:

R. BARCLAY SURRICK, J.